## Henry's Estate

Before Stearne, acting P. J., Sinkler, Klein, Bolger, and Ladner, JJ.

702

706

*Wesley H. Caldwell,* of *Roper & Caldwell,* and *Charles Hunsicker,* for exceptants.

*Lewis H. Van Dusen, Jr.,* and *Francis M. McAdams,* contra.

LADNER, J., June 21, 1940.—In this estate the minors had undivided interests in certain real estate which upon petitions of their guardian (the accountant here) this court authorized to be sold pursuant to the Revised Price Act of June 7, 1917, P. L. 388. The sum directed in the decrees to be paid the accountant was by her invested without specific order of the court. The income and part of the principal so invested was afterwards expended for

the minors' support. Exceptants, Rita Henry Vitelli, Adelaide C. H. Dreher, and Helen Henry Lodge, late minors, objected at the audit to this action of the guardian on the ground that section 10 of the Revised Price Act, supra, requires investments and distribution of the proceeds of real estate so sold to be made *only* under orders of this court. The learned auditing judge rejected this contention and ruled that section 41 (*a*) of the Fiduciaries Act of June 7, 1917, P. L. 447, which outlines legal investments and authorizes fiduciaries to invest therein, was broad enough to include moneys received under the Revised Price Act; and that so far as concerned distribution made for the support and maintenance of minors without authorization of the court, it was within his power to ratify what this court might have previously authorized; and he did so after finding the expenditures were proper and fairly made.

Section 10 of the Revised Price Act, so far as is material here, provides:

"The purchase-money, mortgage-money . . . shall be held for and applied to the use and benefit of the same persons and for the same interests, legal or equitable, present or future, vested, contingent or executory, as the title so sold, mortgaged . . . and all remainders, whether contingent or to a class, executory devises, and debts of a decedent not of record, shall be transferred to the fund or title raised by the proceedings in pursuance of the decree, as to which fund or title they shall take effect, in like manner as they would have taken effect as to the title transferred under the decree. *The court shall make such order or orders, from time to time, as to the distribution or investment of such funds, as may be requisite to protect the interest of all persons who are or may become entitled thereto, or to any part thereof.* In every case of a sale, mortgage . . . shall, nevertheless, have and retain the quality of real estate as respects the devolution, under the intestate laws, of the interest of any infant, lunatic, or person non compos mentis, as whose property

the land was sold, mortgaged. . . . The court having jurisdiction may direct the application of such proceeds, or part thereof, for the maintenance and education of minor parties whose personal estate shall be insufficient for such purposes; or, generally, for the maintenance or education of parties having the like interests, vested or expectant; provided such moneys can be equally and equitably so applied, and without diminution of the capital that may of right become the property of parties having unbarred interests or title in remainder or by executory devise."

The clause on which exceptants rely is that italicized. We feel their able counsel has misconstrued the purpose and meaning of this clause. In construing section 10 we must keep in mind the primary purpose of the Revised Price Act, viz., to unshackle real estate and make the title thereof freely alienable. It is a beneficent statute and not to be construed to defeat its main intent: Burton's Appeal, 57 Pa. 213. The act applies not only where minors are co-owners but also where transfer of title is restrained because held in whole or part by persons absent or unheard of under circumstances from which the law may presume their decease; where interests therein are in persons under legal disability to convey; where estates therein have been devised or granted for special or limited purposes; there the legal title is subject to contingent remainders, executory devises or remainders to a class, some or all of whom may not be in being or ascertainable at the time of the entry of the decree, as well as other like situations which render conveyances of title impossible without intervention of the court (see generally section 2 of the act). The purpose of section 10 is manifestly to provide in general language the effect of the sale and the power of the court to deal with the proceeds received therefrom under conditions and circumstances which may require intercession of the court to protect, dispose, or distribute the proceeds in accordance with the respective interests in the real estate sold.

Thus, e. g., jurisdiction is frequently exercised in cases where outstanding interests are in persons absent or unascertained, or where some have but a life interest in whole or part. Under such circumstances since the proceeds stand in place of real estate sold the court must necessarily be applied to for instructions as to investment or distribution of principal and income as the circumstances demand. The power in the court to make necessary orders in the premises is what section 10 seeks to assure. Where, however, a minor's interest in real estate is vested, fixed, and absolute, and his guardian is authorized to join other parties in interest in a sale of the whole, upon receipt of the minor's share of the purchase price, we see no need for further application to the court by the guardian to invest it. His obligation and duty to do so is sufficiently indicated by section 41(a) of the Fiduciaries Act, supra, a guardian being included in the definition of fiduciary by section 1 of that act. In Boyle's Estate, 67 Pa. Superior Ct. 381, 384, it was said: "It is the duty of the guardian when he undertakes the trust to put the estate of his ward to the best uses and make interest thereon or show some satisfactory reason why he does not." Indeed it has never been the practice of this court for a guardian authorized to join in the sale of real estate under the Revised Price Act upon receipt of the minor's share of the purchase price, to afterwards apply for specific leave to invest the sum so received. Nor is the filing of a separate account thereof mandatory or even good practice: Yard's Estate, 17 Phila. 436, 438 (Penrose, J.).

We have examined the decrees pursuant to which the guardian here was authorized to join the other parties in interest in the sale of each of the properties in which the minors had an undivided interest. We find in each case the decree authorized the accountant to join in the sale *upon payment to the guardian of the proportionate share of proceeds due the minors,* and fixed the appro-

priate security which was duly entered. For the sake of accuracy we note that in the case of the sale of 805-07-09 Race Street part of the consideration paid was a purchase money mortgage, but even here the decree expressly fixed the share of the minors in said mortgage to be $22,500.

The money thus paid the guardian, being the absolute property of the minors, was properly invested. While it would have been better practice for the guardian to have applied to this court for authority to expend part of the principal for the minors' support, the failure to do so merely placed on her the burden of justifying the necessity as well as the reasonableness of these expenditures. Since she satisfied the auditing judge by sufficient evidence in this respect we do not feel called upon to interfere.

These exceptions are therefore dismissed.

The rest of the exceptions are directed: (*a*) To the auditing judge's allowance of credits taken for items of the minors' support; (*b*) to the refusal to surcharge for losses arising from the investment in a $14,000 mortgage secured on premises 7224 Woodland Avenue, and (*c*) refusal to disallow "in toto" commissions to the accountant. We have carefully examined the learned auditing judge's findings and rulings upon these questions in the light of the evidence, the briefs and argument of counsel, and find no error therein. On the contrary, we feel a most fair, equitable, and just disposition was made by him of the matters in controversy. Since these rulings are amply vindicated by his careful and comprehensive adjudication, we find it unnecessary to add anything thereto. The exceptions raising these questions are also dismissed.

### Exceptions of Joseph M. Nash

It appears this exceptant was the administrator of the estate of the father of the minors and as such paid over to the guardian $450.77 due them from that estate. Thereafter, on September 15, 1922, he was discharged. The decree appointing the guardian did so without se-

curity but provided that no funds should be received by the guardian "without application to the court and security being first entered." It is now claimed by the late minors that the payment by this administrator was unauthorized. The guardian did, however, account fully for the sum received, and the expenditures out of this fund were expressly found by the auditing judge to have been properly applied for the benefit of the minors. Prior to the filing of the adjudication, now the subject of exceptions, the late minors secured a citation on the administrator and his surety to show cause why his discharge should not be reviewed, vacated, and set aside, which proceedings are still pending.

The exception in question has for its purpose the protection of the administrator and his surety by seeking to have the adjudication modified and the sum paid by the administrator restored to him. Undoubtedly the payment to the guardian before the entry of security was irregular and improper, but the auditing judge and we believe it was due to oversight rather than a deliberate attempt to circumvent the decree of appointment. This being so, and it appearing the sum in question has been fully accounted for to the satisfaction of the auditing judge and no loss has occurred, we are disposed to overlook this error of the accountant and administrator. Under our broad equity powers we may deal with actualities of the situation. We may ratify what might have been previously ordered: Yard's Estate, supra, citing Mussleman's Appeal, 65 Pa. 480, 488, and see Corr's Estate, 12 Dist. R. 788; and since no harm has been done we now confirm the previously unauthorized payment by the exceptant Nash to the accountant. This, we take it, effectually relieves him and his surety from further responsibility and we therefore dismiss his exception.

All exceptions are dismissed and the adjudication is now confirmed absolutely.